1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramon Rodriguez, ) | |
|     Plaintiff, ) | No. CV-10-0636-TUC-DTF |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| Michael J. Astrue, Commissioner of ) | |
| the Social Security Administration, ) | |
| ) | |
|     Defendant. ) | |

Plaintiff Ramon Rodriguez brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). Plaintiff filed an opening brief and Defendant responded (Doc. 17, 18); Plaintiff did not reply. The parties consented to exercise of jurisdiction by a Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). (Docs. 6, 11.) This case presents one issue on appeal, whether the Administrative Law Judge's (ALJ) decision at Step Five – that Rodriguez could perform other work in the national economy – was supported by substantial evidence. Based on the pleadings and the record, the Court finds that Plaintiff is not entitled to relief.

## **PROCEDURAL HISTORY**

Rodriguez filed an application for Supplemental Security Income (SSI) and Social Security disability insurance benefits (DIB) on January 8, 2008. (Administrative Record (AR) 140, 146). Rodriguez alleged disability from December 17, 2007. (AR 140, 146.) Rodriguez's applications were denied upon initial review (AR 69-72) and on reconsideration (AR 73-75). A hearing was held on September 30, 2009 (AR 33-56), after which ALJ Peter J. Baum found, at Step Five, that Rodriguez was not disabled (AR 18-26). The Appeals

Council denied Rodriguez's request to review the ALJ's decision. (AR 1.)

**FACTUAL HISTORY**

Rodriguez was born on March 12, 1976, making him 31 at the alleged onset date of his disability. (AR 146.) He completed school through the ninth grade. (AR 173.) From 1994 to 2001, he worked in various jobs doing landscaping, maintenance and cooking, earning between $2000 and $5000 per year. (AR 155, 158.) Rodriguez stopped working in 2001, after he was fired for arriving late to work.[1] (AR 157.) Rodriguez was in a car accident in December 2001 (AR 160), in which he severely injured his left arm, fractured a bone in his ankle requiring surgery, and suffered a closed head injury (AR 255, 257). At the time he was discharged from the hospital, he had no functional utility of his left arm and his head injury was affecting his mental abilities. (AR 260.) On March 31, 2009, Rodriguez's left arm was amputated below the elbow. (AR 465.)

The ALJ found that Rodriguez had a severe impairment, status post below-elbow amputation. (AR 20.) In addition, the ALJ found Rodriguez had nonsevere impairments: hepatitis C, depression and hypertension. (AR 21.) The ALJ assessed Rodriguez's Residual Functional Capacity (RFC) and concluded he could: perform medium work, except he has no functional use of his left arm; frequently climb ramps and stairs, balance, stoop, kneel and crouch; occasionally crawl; never climb ladders, ropes or scaffolds; and reach in all directions, finger and feel with his right hand with no limitations. He should avoid concentrated exposure to hazards. (AR 21-22.) Further, he found Rodriguez "has profound difficulty registering information if it is presented in auditory verbal way but does quite well with visual-spatial registration and retention; and he would have difficulty comprehending lots of information because of borderline intelligence." (AR 22.) The ALJ determined that Rodriguez could not perform his past relevant work as a cook, dishwasher or landscaper. (AR 24.)

---

[1] Rodriguez completed a five-year prison term for armed robbery in December 2007. (AR 39.)

Rodriguez was found to be unable to perform the full range of medium work due to additional limitations, particularly his inability to use his left arm. (AR 25.) The ALJ relied on the testimony of a vocational expert (VE) in finding that Rodriguez could work as a light janitorial cleaner. (*Id.*) The expert testified there were 10,611 such jobs in the state, but the number available would be reduced by about one quarter due to Rodriguez's limitations. (AR 50-51.) The expert agreed that the Dictionary of Occupational Titles (DOT) does not address a situation in which a claimant has only one functional arm, thus, it was not useful in evaluating the jobs available to Rodriguez. (AR 51.) In his decision, the ALJ concluded that because his RFC finding was more precise than that contemplated by the DOT, the DOT could not be accurately applied in this case. (AR 25.) The VE testified that she had placed one person with one arm and similar mental limitations in a light janitorial job, and she remembered seeing more than one such person working in that position. (AR 54.)

## **STANDARD OF REVIEW**

The Commissioner employs a five-step sequential process to evaluate DIB and SSI claims. 20 C.F.R. §§ 404.1520, 416.920; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In this case, Rodriguez was denied at Step Five of the evaluation process. The Step Five determination is made on the basis of four factors: the claimant's RFC, age, education and work experience. *Hoopai*, 499 F.3d at 1074. "The Commissioner can meet this burden

through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## **DISCUSSION**

Rodriguez challenges solely the ALJ's Step Five decision, arguing that it is not supported by substantial evidence.[2] Specifically, he contends that, because of his non-

---

[2] Rodriguez's brief includes lengthy quotes from the medical opinions, including those of Drs. Bergen and Musicant. (Doc. 17 at 2, 5.) He does not acknowledge that these opinions were given little weight by the ALJ nor does he challenge that finding. Such a challenge would likely fail as the ALJ provided specific, legitimate reasons for the rejection. *See Lester v. Chater*, 81 F.3d 821, 830-31(9th Cir. 1995).

exertional limitations (inability to use his left arm and dementia secondary to traumatic brain injury), he cannot perform any work available in the national economy. His argument focuses on the propriety of the ALJ relying on the testimony of the VE.

Rodriguez argues that there is no "scientific basis to the VE testimony that no erosion of labor exists due to Plaintiff's manual dexterity and mental limitations." (Doc. 17 at 13.) His support for this argument is unclear. A vocational expert's expertise is sufficient foundation for her testimony, and an ALJ may rely on a vocational expert's testimony regarding the number of relevant jobs in the national economy. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Rodriguez appears to be relying, in part, on the extensive material he quotes from the O*NET (the Department of Labor's Occupational Information Network). He states that it has replaced the DOT and contains more detailed information on non-exertional limitations, including manual dexterity and mental limitations. Even if true, the relevance of this material is not facially apparent and he provides no explanation. Further, there is no support for his assertion that the O*NET is now used by the Social Security Administration (SSA) for disability adjudication.[3] In fact, the agency continues to recognize the DOT as its primary source of information regarding jobs in the national economy. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1); SSR 00-4p. If there is a conflict between the DOT and the testimony of a vocational expert, an ALJ must resolve the conflict. SSR 00-4p. It is reasonable for an ALJ to rely on a vocational expert's testimony rather than the DOT when the VE's testimony includes information not listed in the DOT or provides more specific information about the requirements of a particular job than that available in the DOT. *Id.* In this case, the ALJ acknowledged a conflict and relied upon the VE's testimony because she had knowledge of

---

[3] In a review requested by the SSA, it was determined that the O*NET was not suitable for disability adjudication. Occupational Information Development Advisory Panel, *A Review of the National Academy of Sciences Report A Database for a Changing Economy: Review of the Occupational Information Network (O*NET)*, 1 (June 28, 2010), http://www.ssa.gov/oidap/Documents/COMPLETE%20FINAL--Findings%20Report%20OIDAP%20062810.pdf.

the local market and she addressed the claimant's precise RFC (including his limitation to the use of one arm), while the DOT did not address his particular limitations. (AR 25, 51-54.) The ALJ satisfied the requirements of SSR 00-4p by providing a reasonable explanation for his reliance on the VE's testimony to the extent it conflicted with the DOT. *See Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

Rodriguez also argues the SSA rules recognize that a person with one arm has significant limitations in performing unskilled work. Rodriguez quotes several rules[4] but provides no explanation as to how they prove his point. It appears Rodriguez is relying on language providing that most sedentary work requires bilateral manual dexterity, and that much light work requires gross use of the hands to grasp, hold and turn objects. These rules are inapposite because the ALJ did not make a finding that Rodriguez could perform the full range of light or sedentary work. The ALJ acknowledged that Rodriguez lacked bilateral manual dexterity and included that limitation in the information he provided to the VE. (AR 49-50.) Then, relying on the VE's testimony, the ALJ identified a light job that Rodriguez could do given his non-exertional limitations. Rodriguez has not identified any error in this decision-making process. There is no rule that lack of bilateral manual dexterity eliminates a person's ability to perform all jobs. Rather, the SSA rules provide that in a complex case involving how non-exertional limitations impact the performance of work activities, an ALJ may find input from a VE helpful. SSR 83-14; *see also* 20 C.F.R. §§ 404.1566(e), 416.966(e) (in assessing whether a claimant can do specific jobs available in the national economy, an ALJ may rely on a vocational expert). The ALJ sought input from a VE and provided a reasonable basis for relying upon her testimony.

## **CONCLUSION**

The Court concludes the ALJ's Step Five finding that Plaintiff was not disabled because he could perform other work available in the national economy is supported by

---

[4] Rodriguez cites 20 C.F.R. §§ 404, Subpart P, App. 2, 200.00(h); 416.967(b); and SSR 83-14. The Court notes that he quotes from a 1988 version of the appendix, which does not correlate with the current language found at that section.

- 6 -

substantial evidence and is not based on legal error.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 17) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court should enter judgment and close this case.

DATED this 17th day of February, 2012.

D. Thomas Ferraro
United States Magistrate Judge